UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| **Melinda Gail Nelson** | Civil No. 10-4001 (JNE/TNL) |
| **o/b/o M.K.N.B,** | |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue**, | |
| Commissioner of Social Security, | |
| Defendant. | |

TONY N. LEUNG, United States Magistrate Judge

Plaintiff Melinda Nelson (Nelson) brings this action contesting the Commissioner's decision that she misapplied the past-due supplemental security income benefits of her daughter, M.K.N.B. Jurisdiction is proper under 42 U.S.C. § 405(g). Nelson is represented by Laura Hammargren and Peter W. Carter, Esqs., Dorsy & Whitney LLP. Defendant is represented by Lonnie F. Bryan, Assistant U.S. Attorney. The case was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636; and this matter is before the Court on Plaintiff's motion for summary judgment and Defendant's motion for remand. (Doc. Nos. 11, 20.) For the reasons set forth below, the Court recommends that Nelson's motion for summary judgment be denied; and Defendant's motion for remand be granted.

**I.   BACKGROUND**

Nelson applied for supplemental security income ("SSI") for her child, M.K.N.B., and requested that she become M.K.N.B.'s representative payee. (Tr. 14-26.) The Social Security

Administration ("SSA") granted SSI benefits to M.K.N.B. on July 27, 2006, and named Nelson her representative payee. (Tr. 27-28.) The SSA also determined that M.K.N.B. was entitled to past-due SSI benefits in the amount of $8,980.78. (Tr. 67-70.) On August 17, 2006, the SSA instructed Nelson to set up a separate account ("dedicated account") in a financial institution for the past-due benefits, and it provided instructions on permissible uses of the funds it would deposit into the account. (Id.) After Nelson established the account, the SSA made two deposits into the account: $1,809.00 in August 2006, and $1,869.00 on February 26, 2007. (Tr. 82, 84.)

At the request of the SSA, on August 22, 2007, Nelson completed a form entitled "Representative Payee Report of Benefits and Dedicated Account." (Tr. 87-89). In the form, Nelson reported that she withdrew $3,678.00 from the dedicated account to pay for M.K.N.B.'s care. (Id.) The SSA also received a letter from Nelson, which was dated August 22, 2007. (Tr. 90-91.) In the letter, Nelson stated she hired a personal care attendant ("PCA") to help with her daughter; she paid the PCA; and the PCA had records of the payment. (Id.) Additionally, the SSA received a letter from Tamika Jackson, which was dated August 23, 2007. (Tr. 92.) In the letter, Ms. Jackson stated that Nelson paid her to provide personal care to M.K.N.B. from September 2006 through June 2007, and she worked two hours a day, Monday through Friday, at $10.00 per hour, for a total of $3,970.00. (Id.)

On August 28, 2007, the SSA notified Nelson that she did not use the $3,678.00 according to the rules for dedicated accounts, and she would have to repay the money. (Tr. 106-08.) The reason for the SSA's determination was that the "fund was depleted right away," and Nelson "failed to provide receipts to show the spending expenditures." (Id.)

The record contains an unsigned, undated "Statement of Claimant or Other Person," which appears to have been sent to Tamika Jackson for the purpose of obtaining her release for IRS records to verify her earnings. (Tr. 99-100.) The record also contains a letter from Jackson dated September 4, 2007. The letter states:

> To whom it may concern, I received your form for [M.K.N.B.].
>
> I did do the care of [M.K.N.B.] for the dates given and received money from Melinda Nelson.
>
> I didn't file taxes and will not give my social security number when Melinda asked for it in Jan. I said no[,] my boyfriend tore up your paper you sent. He thinks I'll have to pay back the money but Melinda did give me monies for [M.K.N.B.'s] care and activities[;] here are the receipts[.] Due to all the trouble I will no longer care for [M.K.N.B.]. Please do not contact me and tell Ms. Nelson the same!!

(Tr. 101.)

Nelson then requested reconsideration of the SSA's decision. (Tr. 102, 109.) She provided receipts[1] showing that she paid money to Ms. Jackson for M.K.N.B.'s personal care between September 2006 and June 2007. (Tr. 78-80.) The SSA denied her request, giving the following reasons: (1) "base[d] on your bank statement from City and County Credit [U]nion, all the money we sen[t] to [M.K.N.B.'s] dedicate[d] account ha[d] been withdraw[n] [in] the

---

[1] The handwritten receipts indicate the following cash payments to Tamika Jackson:
    Sept. 8, 2006, $100.00      Jan. 26, 2007, $340.00
    Sept. 15, 2006, $100.00    Feb. 28, 2007, $430.00
    Sept. 29, 2006, $100.00    March 30, 2007, $400.00
    Oct. 31, 2006, $400.00     April 20, 2007, $300.00
    Nov. 1, 2006, $400.00      May 25, 2007, $300.00
    Dec. 15, 2006, $300.00    June 29, 2007, $400.00.

same month";[2] (2) "The receipts that you provided to SSA [as] proof of your expense for [M.K.N.B. were] not correct" (Tr. 114-15).

At the next stage of the administrative process, on August 28, 2008, a hearing was held before an Administrative Law Judge. (Tr. 135.) Nelson testified as follows at the hearing. She paid a personal care attendant, Tamika Jackson, to help her with her daughter, because she could not get an agency to provide help. (Tr. 138.) She met Ms. Jackson at church and saw that she got along with her daughter, so she hired her. (Id.) Ms. Jackson did things like take her daughter on outings, and watch her for two hours in the evenings when Nelson got home from work. (Tr. 138-39.) Jackson, however, refused to provide her social security number to the SSA when Nelson asked her. (Tr. 139.) Nelson paid Jackson in cash, but she kept receipts, which she provided to the SSA. (Id.) Jackson was already working for Nelson when she received the first deposit from the SSA, and Nelson had been using her own money to pay her. (Tr. 140.) Nelson did not have any other receipts because she used the money to pay Jackson, and all of the money went to care for her daughter. (Tr. 140-41.)

Chyrisse Washington also testified at the hearing. (Tr. 142.) She had known Nelson for thirty years, and knew M.K.N.B. since she was born. (Id.) She also met Tamika Jackson through a friend. (Tr. 142-43.) Washington testified that Jackson cared for M.K.N.B. from

---

[2]   The account statements from City & County Credit Union show the following withdrawals:

| | |
|---|---|
| Aug. 15, 2006  $100.00 | Aug. 24, 2007  $70.00 |
| Aug. 16, 2006  $600.00 | Aug. 24, 2007  $19.00 |
| Aug. 16, 2006  $100.00 | Feb. 26, 2007  $560.00 |
| Aug. 17, 2006  $100.00 | Feb. 27, 2007  $174.00 |
| Aug. 21, 2007  $500.00 | Feb. 26, 2007  $100.00 |
| Aug. 21, 2007  $220.00 | Feb. 28, 2007  $120.00 |
| Aug. 22, 2007  $100.00 | Apr. 13, 2007  $5.00 |

(Tr. 81-84.)

August or September of 2006, to the end of the school year 2007, which was June.  (Tr. 143.)

She further testified that Nelson compensated Jackson for her work.  (Id.)

On December 10, 2008. the ALJ issued a decision unfavorable to Nelson.  (Tr. 7-13.)

The ALJ made the following findings:

> 1. The claimant, [M.K.N.B.], a minor child, was found disabled as of December 30, 2003, based on an application for supplemental security income benefits protectively filed on that date.
>
> 2. Melinda Nelson, the claimant's mother, was selected as the claimant's representative payee.
>
> 3. The representative payee has failed to provide proof of the use of the claimant's past-due supplemental security income payments in the amount of $3,678.00
>
> 4. Misapplication of benefits in the amount of $3,678.00 has occurred.

(Tr. 12.)  The ALJ explained his decision with the following statements:

> The receipts Ms. Nelson submitted do not explain the sudden and rapid expenditure of funds as indicated on the statements from the City & County Credit Union.  The credit union statements from August 2006 and February 2007 indicate that the funds in the account at those times were quickly depleted within a few days of deposit on each occasion rather than over an extended period of time; therefore, the receipts Ms. Nelson submitted do not explain the rapid withdrawals of funds as indicated on the credit union statements.

(Id.)

Nelson requested that the Appeals Council review the ALJ's decision, but it denied her request.  (Tr. 3-4.)  The Appeals Council explained its decision:

> The Administrative Law Judge explained that the bank records you submitted show that these retroactive payments were essentially removed from the dedicated account within a month of their issuances, which does not support the expenditures shown in the

> receipts you submitted, which purportedly documented wages paid to a personal care attendant over a 10-month period. The fact that the alleged personal care attendant would not sign a statement regarding these alleged payments under a penalty clause or provide her Social Security account number so that these "wages" could be verified, only further affirms the findings that you misapplied all of the retroactive payments made to your daughter's dedicated account.

(Tr. 4.) The Appeals Council's denial of review of the ALJ's decision made the ALJ's decision final for purposes of judicial review. 42 U.S.C. § 405(g); Clay v. Barnhart, 417 F.3d 922, 928 (8th Cir. 2005); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). Nelson filed a complaint in this Court on September 22, 2010, seeking review of the agency decision. [Doc. No. 1.]

## II. ANALYSIS

Review by this Court of the Commissioner's final decision is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3); Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006). "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as whole.'" Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) (quotation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted); see also Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (quoting Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998)). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis." Gavin, 811 F.2d at 1199. "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." Id. In

6

reviewing the administrative decision, "'[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The regulation governing use of benefit payments from a dedicated account by a representative payee provides:

> (e) *Dedicated accounts for eligible individuals under age 18.* (1) When past-due benefit payments are required to be paid into a separate dedicated account (see §416.546), the representative payee is required to establish in a financial institution an account dedicated to the purposes described in paragraph (e)(2) of this section. This dedicated account may be a checking, savings or money market account subject to the titling requirements set forth in §416.645. Dedicated accounts may not be in the form of certificates of deposit, mutual funds, stocks, bonds or trusts.
>
> (2) A representative payee shall use dedicated account funds, whether deposited on a mandatory or permissive basis (as described in §416.546), for the benefit of the child and only for the following allowable expenses—
>
> (i) Medical treatment and education or job skills training;
>
> (ii) If related to the child's impairment(s), personal needs assistance; special equipment; housing modification; and therapy or rehabilitation; or
>
> (iii) Other items and services related to the child's impairment(s) that we determine to be appropriate. The representative payee must explain why or how the other item or service relates to the impairment(s) of the child.
>
> (3) Representative payees must keep records and receipts of all deposits to and expenditures from dedicated accounts, and must submit these records to us upon our request, as explained in §§ 416.635 and 416.665.
>
> (4) The use of funds from a dedicated account in any manner not authorized by this section constitutes a misapplication of benefits. These misapplied benefits are not an overpayment as defined in §416.537; however, if we determine that a representative payee knowingly misapplied funds in a dedicated account, that

> representative payee shall be liable to us in an amount equal to the total amount of the misapplied funds.
>
> (5) The restrictions described in this section and the income and resource exclusions described in §§416.1124(c)(20) and 416.1247 shall continue to apply until all funds in the dedicated account are depleted or eligibility for benefits terminates, whichever comes first. . .

20 C.F.R. § 416.640(e); <u>see also</u> 42 U.S.C. § 1383(a)(2)(F)(i), (ii).  The penalty for misapplication of such funds is also found in 42 U.S.C. § 1383(a)(2)(F)(ii)(III):

> (III) The use of funds from an account established under clause (i) in any manner not authorized by this clause- -
>
> (aa) by a representative payee shall be considered a misapplication of benefits for all purposes of this paragraph, and any representative payee who knowingly misapplies benefits from such an account shall be liable to the Commissioner in an amount equal to the total amount of such benefits. . .

The parties in this case agree that the ALJ's decision is not supported by substantial evidence.  The only issue for the Court is the appropriate remedy.  Defendant contends that remand is necessary "to obtain evidence of what happened with the money that was withdrawn from the dedicated account; evaluate the credibility of the person making the withdrawal(s) and other witnesses; and determine if the withdrawal was misused or knowingly misapplied, and if so, whether Plaintiff, Ms. Nelson, should be required to repay the funds."  (Def.'s Mem. in Supp. of Mot. for Remand at 1.)

Nelson asserts the proper remedy is reversal of the ALJ's decision because there is strong evidence of proper application of benefits.  Nelson cites case law from other circuits in support of her contention that the agency should not be granted a voluntary remand when it wishes to retry a case and where the record establishes a plaintiff's entitlement to benefits.  Plaintiff asserts the law does not establish the immediacy in which funds withdrawn from a dedicated account

must be used for a reasonably foreseeable, enumerated expenditure under 42 U.S.C. § 1383(a)(2)(F)(ii)(I) and 20 C.F.R. § 640(e). Plaintiff further asserts that all of the evidence before the ALJ demonstrated that she spent M.K.N.B.'s past-due benefits on a reasonably foreseeable, enumerated expenditure, salary for a personal care attendant. (Pl.'s Reply Brief in Supp. of Mot. for Summ. J. and Opp. to Def.'s Mot. for Remand at 6-7.)

In the typical Social Security disability case, where the issue is whether the ALJ's disability determination was supported by substantial evidence in the record, reversal is appropriate "where the record overwhelmingly supports a finding of disability." Pate-Fires v. Astrue, 564 F.3d 935, 947 (8th Cir. 2009) (reversing where the "clear weight of the evidence fully support[ed] a determination . . . [of disability.]") In this case, the issue is whether substantial evidence in the record supports the ALJ's determination that Nelson misapplied M.K.N.B.'s past due SSI benefits. The Court does not find the testimony and handwritten receipts in the record to be overwhelming evidence that the funds from the dedicated account were spent properly because the dedicated account statements did not match the receipts provided by Nelson, and Nelson did not provide an explanation for this. The Court recognizes the ALJ did not ask Nelson to explain why the receipts and account withdrawals did not match in timing and amount. (Tr. 137-46.) There was an appearance of conflict in the evidence. "It is the ALJ's duty to resolve conflicts in the evidence." Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007).

In the typical social security disability case, when reviewing a claimant's subjective allegation of pain, the ALJ must make an express credibility determination and give reasons for discrediting the testimony. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). The Eighth Circuit has not provided guidelines for making credibility determinations on the issue of misapplication

9

of past-due benefits.  However, if a representative payee testifies in apparent conflict with other evidence in the record, and the ALJ does not make an express credibility determination, a court cannot conduct meaningful judicial review of the ALJ's decision.  Therefore, the ALJ should have given express reasons for discounting the representative payee's testimony, and the testimony of other witnesses.

Remand for further proceedings is the proper remedy.  If additional evidence is needed for the ALJ to make an express credibility determination regarding Nelson's testimony and testimony of other witnesses, the ALJ must conduct a new hearing and then provide reasons for his credibility determination.  The Court recognizes that Plaintiff perceives such a remedy as an unfair "do-over" on the part of the agency, which will prolong a final determination in this matter.  However, it is the nature of judicial review over agency decisions where the agency, not a reviewing court, has the duty to make factual findings, which dictates the proper remedy in this case.

## III.   CONCLUSION

The parties agree the ALJ's decision was not supported by substantial evidence in the record.  Because there was an apparent conflict in the evidence, and ALJ did not make express credibility determinations regarding Nelson's and other witness' testimony, remand is required for further proceedings.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

    1.       Plaintiff's motion for summary judgment (Doc. No. 11) be DENIED.

    2.       Defendant's motion for remand (Doc. No. 20) be GRANTED.

    3.       The case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

    4.       That judgment be entered accordingly.

Dated this __31st day of August, 2011.          ____*s/ Tony N. Leung*____

                                                                                      TONY N. LEUNG

                                                                                     United States Magistrate Judge

      Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by <u>September 16, 2011</u>.  A party may respond to the objections within 14 days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit